Tampa Union Terminal Company, a Corporation, *Plaintiff in Error,* v. Dr. H. M. Richards, *Defendant in Error.*

146 So. 591.

Opinion filed March 2, 1933.

Re-hearing denied.

*McKay, Withers & Ramsey,* of Tampa, for Plaintiff in Error.

*Peterson, Carter & Langston,* of Lakeland, for Defendant in Error.

BARNS, Circuit Judge.—This suit is before us upon three counts of the plaintiff's declaration.

A contract was entered into between the plaintiff and defendant as follows:

## MARKETING AGREEMENT.

"In consideration of One Dollar, cash paid by each party hereto to the other, receipt of which is hereby acknowledged, and of the mutual covenants hereof, the undersigned Dr. H. M. Richards of Lakeland, Fla., hereinafter referred to as the GROWER, and Tampa Union Terminal Company, hereinafter referred to as the DISTRIBUTOR, have entered into agreement as follows:

"THE DISTRIBUTOR shall be the packer and marketing agent for the GROWER, and from date hereof until this agreement be terminated as hereinafter provided for, shall handle the wholesale distribution, sale and disposition of all merchantable citrus fruits covered by this agreement; and is hereby authorized to handle the same according to its best judgment, using such market, methods and instrumentalities as it may at any time deem advisable in an effort to produce best net results.

"All the said fruits shall be packed through the packing house operated by Tampa Union Terminal Company, at Tampa, Florida, and shall entirely according to the judgment of the management of said packing house as to the quality, character and condition of said fruits, be graded and packed in accordance with the rules, standards, customs, practices and charges therefor, in effect at said packing house at the time of packing.

"The DISTRIBUTOR agrees to counsel with the GROWER from time to time through its representatives or otherwise, in

regard to the best methods of harvesting and packing and general market conditions; to render accountings to the GROWER covering all products handled by the DISTRIBUTOR hereunder, and to make remittances of net proceeds due the GROWER as promptly as reasonably possible after final consummation of sales and acceptance of cars by purchasers.

"The DISTRIBUTOR agrees to market the citrus fruit of the GROWER in such markets as seem most advantageous from the standpoint of price for the various classes of fruit by the GROWERS' groves. It is intended that shipments shall be made by both railroad and steamship. Insofar as conditions will permit steamship transportation under refrigeration will be used to Atlantic, Pacific and European ports and market points accessible from such ports by short rail hauls. The basic rate by steamship under refrigeration from Tampa to New York will be 55c per box.

"The DISTRIBUTOR and the GROWER agree that the highest degree of skill will be used in harvesting and in packing in order that the fruit and the pack shall arrive at the market of destination in the best condition possible and in the most attractive appearance to bring top prices for each grade shipped.

"Any costs or charges which the DISTRIBUTOR may at any time pay out or advance to any party with respect to the harvesting, hauling, packing or otherwise in connection with the handling of any said fruit shall be chargeable to the GROWER and deductable from the proceeds of sales.

"The GROWER agrees to pay the DISTRIBUTOR for the following services as follows:

| Oranges | | Grapefruit | Tangerines |
|---|---|---|---|
| Picking | _____ | .08 | _____ |
| Hauling | _____ | .25 | _____ |
| Coloring | _____ | _____ | _____ |
| Packing | _____ | .75 | _____ |
| Pre-cooling | _____ | .10 | _____ |
| Total | _____ | $1.18 | _____ |

"The GROWER agrees to pay the DISTRIBUTOR for its marketing service the sum of Fifteen Cents (15c) on each box of fruit covered by this agreement.

"Charges cover holdover in cold storage to next steamship sailing for port of destination.

"In case GROWER desires to hold shipment in cold storage for longer period of time to await more favorable market conditions or for any other reason, or for any period of time after the normal shipping season, the charge for such service shall be Ten Cents (10c) per box per month or any part thereof.

"This agreement covers all merchantable citrus fruits to come from groves belonging to H. M. Richards and described in general as follows:

"Dr H. M. Richards grove in Lucerne Park Grove Section of Polk County.

"Each of the parties hereto reverses and shall have an absolute right to terminate this Agreement as of the first day of July, of any calendar year after the year 1928, upon giving to the other party hereto, as the case may be, not less than thirty days previous written notice of such termination, provided all growers' obligations shall have been fully paid.

"Executed in duplicate by the said parties for themselves this 16th day of March, 1929, each said duplicate to be considered as an original.

H. M. RICHARDS, (SEAL)

Grower.

WITNESS: C. E. KIRKPATRICK.

TAMPA UNION TERMINAL COMPANY,

Distributor.

By J. B. JOHNSTON."

The *first count* of the declaration alleges that the plaintiff was about to sell his crop of citrus fruit at 95c per box on the trees to a prospective buyer, when defendant found it out and as an inducement to the plaintiff to enter a contract with it, represented to the plaintiff

"1. That it would be a foolish move on plaintiff's part to accept the offer of 95c per field crate or box for such fruit;

"2. That it, the defendant, would and could as a matter of fact get for the plaintiff many times such price per box for his fruit if the defendant be permitted to handle the same;

"3. That the defendant did not consign any of the fruit handled by it or permit the same to be auctioned off, but made only complete sales of fruit handled by it;

"4. That it, the defendant, had recently installed a cold storage plant that preserved citrus fruits in a perfect condition for a period of time in excess of the time extending from March of one year until the succeeding fall crop of fruit was properly matured for shipping;

"5. That it, in addition to the usual arrangements for cold storage plants, had installed precooling rooms and that by means thereof it was able to keep in perfect order and did

keep in perfect condition citrus fruits from one citrus fruit season until the height of another season, thus being able, as it presented to the plaintiff, to keep its fruit until it could secure the price it demanded;

"6. That it, the defendant, as a matter of fact, was able to preserve the citrus fruit handled by it from season to season and had inserted in its contract forms provisions for holding the fruits for any period of time in excess of the normal shipping season of citrus fruits;"

that plaintiff believed said representations, relied upon them as true, rejected the 95c offer, and entered into contracts with the defendant permitting it "to handle the distribution, sale and disposition of his fruit."

Said count further alleged

"1. That the representation to the effect that it would be a foolish move on plaintiff's part to accept the offer of 95c per field crate or box for such fruit was untrue;

"2. That the representation that the defendant could and did as a matter of fact get more many times for the plaintiff such sums per box for his fruit was untrue.

"3. That the representation that the defendant did not consign any of the citrus fruit handled by it or permit same to be auctioned off but only made complete sale of fruit handled by it was untrue.

"4. That the representation as to the time of its keeping citrus fruits was untrue in that it could not keep the fruit in good condition for such periods of time;

"5. That the representation to the effect that it was able and did keep in perfect condition citrus fruit from one citrus season to the height of another citrus season was untrue; that the defendant at such time knew that such representations were untrue or recklessly made without regard to their

truth or falsity, with a view to cause the plaintiff to enter into such contract with the defendant; that as a result thereof the plaintiff furnished the defendant 6200 boxes of citrus fruit and secured nothing therefor. The contracts entered into are not made a part of the first count.

The plaintiff by his *second count* alleges that on March 16, 1931, he entered into the contract copied above and recites the charges that the plaintiff agreed to pay the defendant and that the defendant among other things agreed

"1. To counsel with the plaintiff from time to time through its representatives or otherwise in regard to the best methods of harvesting and packing and general market conditions as will be more fully shown by the said contract hereto attached, and made a part hereof and to which reference is prayed.

"2. That in case the plaintiff desired to hold shipments in cold storage for a longer period of time to await more favorable market conditions or for any other reason or for any period of time after the normal shipping season, the defendant would so hold said fruit and make a charge of ten cents per box per month or any part thereof for so holding the same;"

"That the plaintiff has duly performed all the conditions on his part to be performed and that upon entering into the said contract advised the defendant to hold all of his fruit until or past the summer months in order to secure the advantages of the best prices for such fruit."
and that the defendant

"1. Neglected to counsel with the plaintiff in regard to the general market condition until after it had shipped the greater part of plaintiff's fruit taken from said Lucerne Park grove, and

"2. Neglected to hold shipments in cold storage for a long period of time after the normal shipping season as desired and directed by this plaintiff to await more favorable market conditions;"

and that by reason of defendant's failure in counseling with the plaintiff and its failure and refusal to hold said fruit in cold storage for a period of time subsequent to the normal shipping season, the defendant received for the sale of the fruit much less than it would have received had it disposed of same in conformity with the directions of the plaintiff.

The amended *third count* of the declaration is similar to the second, reciting that the plaintiff and defendant orally agreed for the defendant to handle the fruit on a grove other than that referred to in the above described contract upon the same terms and conditions as set forth in the written contract.

The defendant demurred to each of these counts, and said demurrer was overruled and denied by the lower court. To each of these counts the defendant filed pleas:

1. Denying that it made any false representations of fact to the plaintiff;

2. Denying that the plaintiff suffered any loss by reason of any false representations of fact made by the defendant;

3. That it is not guilty;

4. That it never promised as alleged;

5. That it never was indebted as alleged;

6. (As to second and third counts severally) Denying that the defendant ever refused to consult with the plaintiff about the matters alleged;

7. (As to second and third counts severally) Denying that the plaintiff requested the defendant to hold said fruit until after the normal shipping season as alleged.

The *first assignment of error* goes to the sufficiency of the first count.The first two items of false representations relate to no then existing fact. The third item relates to a then existing policy of the defendant as to the manner in which the defendant disposed of fruit. The fourth, fifth and sixth items of alleged false representations relate to the ability of the defendant company to keep fruit in its cold storage plant beyond the normal season for such fruit. The first and second are mere matters of opinion—not existing facts.

"Not only in sales of real or personal property, but also in other business transactions, the law allows a party some latitude in making commendatory statements to induce another to deal with him, and holds that the other cannot complain if he is imprudent enough to act upon them instead of investigating for himself and exercising his own judgment. The doctrine is, that when persons are dealing at arm's length and on equal terms, mere commendatory expressions as to value, quality, prospects, and the like, though exaggerated, cannot be made the basis of a charge of fraud, if there is no representation or concealment of any material fact, and nothing is said or done to prevent the other party from making an examination or investigation for himself. The maxim, taken from the civil law, is *simplex commendatio non obligat.*" 14 Amm. & Eng. Ency. of Law 118.

"Promise to do something in future, made as representation inducing person to enter into contract, will not amount to fraud in legal sense." Brinkley v. Arnold, 98 Fla. 166, 123 So. 569.

The others, even if representations of fact, (which we are not now required to decide) show no casual connection with the loss of the 6200 boxes of fruit. The fact that the

plaintiff had been offered 95c per box, as most could only be evidence of the value of the fruit at the time the offer was made.

Injury to the plaintiff is an essential element of a count for deceit, and the count must show that the deceit or false representations had a casual connection with the injury plead or the facts plead must give rise to a presumption of injury as their natural or probable result

"Thus, it must *show* that the representation made the basis of the charge of fraud was made by the defendant, or with his authority, that it related to a material fact, that it was false, that it was made under such circumstances that person to whom it was made had right to rely on it, and that he did in fact rely on it, and that he was damaged in consequence." 12 R. C. L. 419.

"The pleading must show that the complaining party suffered some injury or damage as a result of the alleged fraud." (ibid) 422. See Wall v. Graham, 68 So. (Ala.) 298.

"It must be *alleged* in a declaration or complaint for false representations, that the plaintiff has suffered damage *in consequence* of the representations complained of, and the plaintiff must also prove that he was injured thereby or in some way placed in a worse condition than if the words spoken had not been false." A Ency. of Pl. & Pr. 908.

"To entitle a person to maintain an action for false fraudulent representations or concealment, it is not enough to show merely that he has been damaged, but it is also necessary to show that the fraud was the cause of the damage." 14 Am. & Eng. Ency. of Law 144.

The contract referred to in the first count is not made a part thereof nor pleaded with sufficient particularity.

"The contract, not being the foundation of an action on the case for false representations and deceit, need not be pleaded as if the action were based thereon, but so much should be set forth as will describe the wrong sought to be redressed." 8 Ency. of Pl. & Pr. 909 See: Waterman v. Mattair, 5 Fla. 211.

The *second and third assignments of error* go to the sufficiency of the second and third counts. We think each of these two counts state a cause of action. That portion of these counts based on the failure of the defendant to counsel with the plaintiff must fail as it does not appear from said counts that the plaintiff ever sought counsel of the defendant which was refused. The effect of this provision was to the effect that defendant would hold itself in readiness to advise with the plaintiff at the plaintiff's election. Such portion of these counts may be considered eliminated as surplusage.

This leaves the count based on the provision for holding shipments in cold storage. These counts allege that the plaintiff elected to hold the fruit in storage pursuant to the provisions of the contract and the defendant's failure to so hold them after being so directed, to the damage of the plaintiff, etc., by reason of the plaintiff receiving a much smaller sum for his fruit than would otherwise have been received had the company held said fruit as directed.

The *fourth, fifth and other assignments of error* go to the lower court admitting testimony of Dr. Richards negotiating to sell his fruit for 95c per box about the time of the entering into of the contract with the defendant, and his opportunity to sell his fruit at that time for such price and the representation that defendant could and would get him much more for his fruit, the manner in which the defendant sold furit, and the market for some Valencias (the grade, quantity or time of sale not being given). All this we consider.

error as same was either not relevant to the issues under the *second* and *third* counts (the first count being insufficient in law) or else such was not competent to prove the issues or was testimony of an unqualified witness.

The *twenty-fifth assignment of error* complains of a charge of the court containing among other things, the following:

" . . . . I charge you that as to the first and second alleged false representations that they are mere matters of opinion and do not, standing alone, constitute such fraudulent representations as the plaintiff would be, in law entitled to reply (rely) upon. In other words, that it would be foolish to accept an offer of 95c per box for fruit when you could get more for it. Those things are mere matters of opinion and standing alone, you would not be authorized to find for the plaintiff on those alone, but you must find that those were merely incidental to and matters in conformity with the subsequent false representations as to actual and existing facts and policies, before you would be entitled to find a verdict for the plaintiff under the first count of the declaration."

This charge has a tendency to correct the erroneous admission of testimony that the plaintiff had an offer of 95c per box for his fruit, but in view of the fact that testimony as to such was stressed so much throughout the trial, and nothing being offered in evidence as to the fair market value of such fruit at a time when the value thereof was material, we are of the opinion that such was ineffectual in straining such testimony from the minds of the jury, and that such charge had a tendency to lend a dignity to the testimony of the offer of 95c per box, which it might not have possessed otherwise. In this respect we are of the opinion that the lower court erred.

The *twenty-sixth, twenty-seventh and twenty-ninth assign-ments of error* complaint of the charge of the court, which among other things, contains the following:

"I charge you as to the second and third counts of the plaintiff's declaration and under the contract which has been introduced in evidence that the plaintiff was entitled to have the advices and consultation of the defendant as to the marketing of his fruit and the plaintiff alleged by his declaration that he was deprived of any such opportunity to advise with respect to the marketing of his fruit, to his damage . . . .

"I charge you that if you find that the plaintiff has been damaged by failure and refusal of the defendant to consult with him and for him to have a voice in the marketing of his fruit, when you should return your verdict for the plaintiff under the second and third counts of the declaration. . . .

"I charge you that if you do not find for the plaintiff under the first count of the declaration, but find for the plaintiff under the second and third counts of the declaration, you should return your verdict for such amount in damages as you find the plaintiff has been damaged by not being permitted to participate in the marketing of his fruit, if anything, the plaintiff, having, by his contract, designated and authorized the defendant to market the crop of fruit, reserving the right to participate and to advise in respect thereto, and if you find that he has been damaged by being denied that right and the breach of the contract by the defendant, you should give him such damages as you find he has actually sustained by reason thereof. . . . ."

These charges presuppose that the terms of the contract required that the defendant advise with the plaintiff as to the marketing of his fruit without first being called so to do by the plaintiff. Such is not our interpretation of the

contract as applied to the facts before us. As stated above, it is our opinion that no such duty arose until the plaintiff sought "counsel." In this respect the lower court erred.

The plaintiff in order to recover in this case must do so
1. Because of the fraud and deceit, or
2. Because of a breach of the contract, or, maybe
3. In an action on the case.
and he must establish some distant theory of his case in order that the defendant may know just what the issues are to be and not be allowed to depart from it at trial. Mere loss by the plaintiff because of entering into the contract is insufficient. The damage recoverable must come from some breach of duty or contract committed by the defendant. Mere breach of duty (fraud) or breach of a promise without being the cause of damage, is insufficient, as are damages suffered not being the natural or probable consequences of a breach of duty or promise.

"In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury." A. L. I. 509, paragraph 330.

"Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (ibid) 515, paragraph 331.

"The general rule that a person is not to be held responsible in damages for the remote consequences of his act, but

only for such as are natural or proximate, applies as fully when it is sought to recover damages for fraud and deceit, as in any other case.

"It has been said that those results of fraud are proximate which the wrongdoer from his position must have contemplated as the probable consequence of his fraud. By the weight of authority, however, it is not at all necessary that the particular damages shall have been contemplated or intended. It is enough if they are the natural and direct consequence of the fraud. If they are it will be considered that the party guilty of the fraud ought reasonably to have contemplated them, and they may be recovered whether actually contemplated or not." 14 Am. & Eng. Ency. of Law 179.

The Court sustains the first, fourth, fifth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-ninth assignments of error without passing on the others, and thereupon reverses the judgment.

Reversed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.